1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  PAUL F. DUNN,                     )  Civil No. 13cv01219 MMA(RBB)
                                      )
12                     Plaintiff,     )  **REPORT AND RECOMMENDATION**
    v.                                )  **DENYING PLAINTIFF'S MOTION FOR**
13                                    )  **SUMMARY JUDGMENT [ECF NO. 13]**
    CAROLYN W. COLVIN, Acting         )  **AND GRANTING DEFENDANT'S**
14  Commissioner of Social            )  **CROSS-MOTION FOR SUMMARY**
    Security,                         )  **JUDGMENT [ECF NO. 14]**
15                                    )
                       Defendant.     )
16  _____  )

17

18       On May 22, 2013, Plaintiff Paul F. Dunn filed a Complaint

19  against Defendant Carolyn W. Colvin, Commissioner of Social

20  Security [ECF No. 1].  Plaintiff challenges the denial of his claim

21  for disability insurance benefits.  (Compl. 2-3, ECF No. 1.)

22  Defendant filed an Answer and the Administrative Record on

23  September 24, 2013 [ECF Nos. 9, 11].

24       Dunn's Motion for Summary Judgment was filed with a Memorandum

25  of Points and Authorities on December 11, 2013 [ECF No. 13].

26  Colvin filed a "Cross-Motion for Summary Judgment and Opposition to

27  Plaintiff's Motion for Summary Judgment" on January 9, 2014, along

28  with a Memorandum of Points and Authorities [ECF No. 14].  On the

1  same day, Defendant refiled the same document and attachment;

2  however, it was docketed as a "Motion for Summary Judgment in

3  Opposition to Plaintiff's Motion for Summary Judgment [ECF No.

4  15]."

5       This matter is suitable for decision without oral argument.

6  See S.D. Cal. Civ. R. 7.1(d)(1).  For the reasons set forth below,

7  the Court recommends that Dunn's Motion for Summary Judgment [ECF

8  No. 13] be **DENIED** and Colvin's Cross-Motion for Summary Judgment

9  [ECF No. 14] be **GRANTED**.

## I.   PROCEDURAL HISTORY

11      On June 11, 2010, Plaintiff filed an application for

12 supplemental security income benefits alleging a disability onset

13 of February 1, 2006.  (Admin. R. Attach. #2, 12, ECF No. 11.)[1]  The

14 Social Security Administration denied his claim on September 21,

15 2010, and again upon reconsideration on January 13, 2011.  (Id.)

16 On February 4, 2011, Dunn submitted a written request for a

17 hearing.  (Id.)

18      A hearing was held before Administrative Law Judge ("ALJ")

19 James S. Carletti on May 18, 2012.  (Id. at 28.)  Dunn, his former

20 attorney David Shore, vocational expert Alan Cummings, and a

21 medical expert were present.  (Id.)  Judge Carletti heard testimony

22 from Plaintiff and the vocational and medical experts.  (Id. at

23 29.)  At the hearing, Cummings noted that Dunn had previous work

24 experience as a sales associate and as a "house worker."  (Id. at

25

26 _____

27      [1]  The administrative record appears on the Court's docket and
   is filed as multiple attachments.  The Court, however, cites the
28 administrative record using the page references contained on the
   original document rather than the page numbers designated by the
   Court's ECF system.

1  54.)  The ALJ asked for the vocational expert's opinion on the

2  following hypothetical:

> Assuming we have a younger individual with a high school
> education, prior work experience as you've indicated as
> light and skilled and medium and unskilled, if there were
> limitations to sedentary work as defined in the
> regulations, but also limitation to simple, repetitive
> tasks, either as a result of a emotional condition,
> medications, or physical problems, and also a non-public
> work environment, would the prior work activity be
> available?  And if not, would there be other work
> activity that exists either nationally or locally that
> could be performed?

9  (Id. at 55.)  The expert testified that the individual could not

10  perform Plaintiff's past work.  (Id.)  Cummings did say, however,

11  that such a person could work as an "assembler," "inspector," or

12  "sorter."  (Id.)  He stated that there were 1,300 assembler jobs in

13  San Diego County and 229,000 in the national economy, and

14  referenced Dictionary of Occupational Titles ("DOT") code 706.684-

15  030, the code for atomizer assembler.  (Id.)  For the inspector

16  job, Cummings maintained that there were 3,200 positions in San

17  Diego County and 410,000 nationally, and identified DOT code

18  669.687-014 for dowel inspectors.  (Id.)  Finally, he explained

19  that there were 500 sorter jobs in San Diego County and 38,000

20  nationally, and cited DOT code 521.687-086, the designation for nut

21  sorter.  (Id.)

22                    **II.   THE ALJ'S DECISION**

23      The administrative law judge issued a written decision on May

24  25, 2012, finding that Plaintiff had "HIV, depression, attention

25  deficit hyperactivity disorder and [a] cognitive disorder, not

26  otherwise specified."  (Id. at 14 (citations omitted); id. at 21.)

27  The claimant, however, did not have an impairment or combination of

28  impairments that met or equaled a listed impairment that would make

1  him eligible for benefits.  (<u>Id.</u> at 15.)  ALJ Carletti concluded

2  that Dunn could "perform medium work . . . [and could] stoop and

3  crouch frequently and perform simple, repetitive tasks."  (<u>Id.</u> at

4  16.)  Relying on the testimony of the vocational expert, the ALJ

5  held that Plaintiff could work as an assembler, inspector, and

6  sorter.  (<u>Id.</u> at 21.)  He stated that these jobs existed in

7  "significant numbers in the national economy."  (<u>Id.</u>)

8                    **III.   STANDARD OF REVIEW**

9        To qualify for disability benefits under the Social Security

10  Act, an applicant must show two things:  (1) He or she suffers from

11  a medically determinable impairment that can be expected to last

12  for a continuous period of twelve months or more, or would result

13  in death; and (2) the impairment renders the applicant incapable of

14  performing the work that he or she previously performed or any

15  other substantially gainful employment that exists in the national

16  economy.  <u>See</u> 42 U.S.C.A. §§ 423(d)(1)(A), (2)(A) (West 2011).  An

17  applicant must meet both requirements to be classified as

18  "disabled."  <u>Id.</u>

19        The Social Security Act allow applicants whose claims have

20  been denied by the Social Security Administration to seek judicial

21  review of the Commissioner's final agency decision.  42 U.S.C.A. §§

22  405(g) (West 2011); <u>id.</u> at 1383(c)(3) (West Supp. 2013).  A

23  district court should affirm the decision unless "it is based upon

24  legal error or is not supported by substantial evidence."  <u>Bayliss</u>

25  <u>v. Barnhart</u>, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing

26  <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1999)).

27        "Substantial evidence is such relevant evidence as a

28  reasonable mind might accept as adequate to support [the ALJ's]

1  conclusion[,]" considering the record as a whole.  Webb v.

2  Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citing Richardson v.

3  Perales, 402 U.S. 389, 401 (1971)).  It means "'more than a mere

4  scintilla but less than a preponderance'" of the evidence.

5  Bayliss, 427 F.3d at 1214 n.1 (quoting Tidwell, 161 F.3d at 601).

6  "'[T]he court must consider both evidence that supports and

7  evidence that detracts from the ALJ's conclusion . . . .'"  Frost

8  v. Barnhart, 314 F.3d 359, 366-67 (9th Cir. 2002) (quoting Jones v.

9  Heckler, 760 F.2d 993, 995 (9th Cir. 1985)).

10      To determine whether a claimant is "disabled," the Social

11  Security regulations use a five-step process outlined in 20 C.F.R.

12  § 404.1520.  If an applicant is found to be "disabled" or "not

13  disabled" at any step, there is no need to proceed further.  Ukolov

14  v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting Schneider

15  v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 974 (9th Cir. 2000)).

16  Although the ALJ must assist the applicant in developing a record,

17  the applicant bears the burden of proof during the first four

18  steps.  Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir.

19  1999).  If the fifth step is reached, however, the burden shifts to

20  the Commissioner.  Id. at 1098.  The steps for evaluating a claim

21  are as follows:

22          Step 1. Is the claimant presently working in a
            substantially gainful activity? If so, then the claimant
23          is "not disabled" within the meaning of the Social
            Security Act and is not entitled to disability insurance
24          benefits.  If the claimant is not working in a
            substantially gainful activity, then the claimant's case
25          cannot be resolved at step one and the evaluation
            proceeds to step two.
26
            Step 2. Is the claimant's impairment severe? If not,
27          then the claimant is "not disabled" and is not entitled
            to disability insurance benefits. If the claimant's
28          impairment is severe, then the claimant's case cannot be

5

resolved at step two and the evaluation proceeds to step three.

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits.  If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step.

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits.

Id. at 1098-99 (footnotes, citations, and emphasis omitted); see also Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001) (giving an abbreviated version of the five steps).

Section 405(g) permits the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision.  42 U.S.C.A. § 405(g).  The matter may also be remanded to the Social Security Administration for further proceedings.  Id.  After a case is remanded and an additional hearing is held, the Commissioner may

6

13cv01219 MMA(RBB)

1    modify or affirm the original findings of fact or the decision.

2    Id.

3        "If the evidence can reasonably support either affirming or

4    reversing the Secretary's conclusion, the court may not substitute

5    its judgment for that of the Secretary." Flaten v. Sec'y Health &

6    Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995) (citations

7    omitted).  The court must uphold the denial of benefits if the

8    evidence is susceptible to more than one rational interpretation,

9    one of which supports the ALJ's decision.  Burch v. Barnhart, 400

10   F.3d 676, 679 (9th Cir. 2005) (citation omitted).

11                        **IV.   DISCUSSION**

12       In his Motion for Summary Judgment, Plaintiff contends that

13   the ALJ erred by relying on unsupported, inaccurate vocational

14   expert testimony. (Mot. Summ. J. Attach. #1 Mem. P. & A. 3-4, 6-7,

15   ECF No. 13.)  Dunn argues that job figures from the Bureau of Labor

16   Statistics, using the North American Industry Classification System

17   (NAICS), establish that the data provided by the vocational expert

18   was "erroneous." (Id. at 4-5, 7.)  This argument was not made at

19   the administrative hearing or to the Appeals Council. (See Admin.

20   R. Attach. #2, 1-5, 28-82, ECF No. 11.)  In her Cross-Motion for

21   Summary Judgment, Colvin argues that Cummings's testimony

22   constituted substantial evidence supporting ALJ Carletti's

23   decision. (Cross-Mot. Summ. J. & Opp'n Attach. #1 Mem. P. & A. 3,

24   ECF No. 14.)

25       "Administrative law judges are responsible for reviewing the

26   evidence and making findings of fact and conclusions of law."  20

27   C.F.R. § 404.1527(e)(2) (2013).  Generally, conflicts in the

28   evidence should be resolved by the Commissioner, not the courts.

                                  7

1  See Spraque v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).  The ALJ

2  is the final arbiter of ambiguities in the medical evidence.

3  Tommasetti v. Astrue, 533 F.3d 1035, 1041-42 (9th Cir. 2008).  The

4  Commissioner's decision must be upheld when the evidence would

5  support more than one rational interpretation.  Havrylovich v.

6  Astrue, Civil No. 09-1113-HA, 2011 U.S. Dist. LEXIS 7187, at *4 (D.

7  Or. Jan. 25, 2011) (citing Thomas v. Barnhart, 278 F.3d 947, 954

8  (9th Cir. 2002)).

9      Dunn requests that this matter be reversed and remanded "for

10  the correction of the legal errors."  (Mot. Summ. J. Attach. #1

11  Mem. P. & A. 8, ECF No. 13.)  The Ninth Circuit has articulated the

12  standard district courts must apply when deciding whether to remand

13  a matter for further proceedings:

14          Remand for further administrative proceedings is
        appropriate if enhancement of the record would be useful.
15      Conversely, where the record has been developed fully and
        further administrative proceedings would serve no useful
16      purpose, the district court should remand for an
        immediate award of benefits.  More specifically, the
17      district court should credit evidence that was rejected
        during the administrative process and remand for an
18      immediate award of benefits if (1) the ALJ failed to
        provide legally sufficient reasons for rejecting the
19      evidence; (2) there are no outstanding issues that must
        be resolved before a determination of disability can be
20      made; and (3) it is clear from the record that the ALJ
        would be required to find the claimant disabled were such
21      evidence credited.

22  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citations

23  omitted); see Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d

24  1135, 1138 (9th Cir. 2011) (applying the standard outlined in

25  Benecke).  "A claimant is not entitled to benefits under the

26  statute unless the claimant is, in fact, disabled, no matter how

27  egregious the ALJ's errors may be."  Strauss, 635 F.3d at 1138

28  (citation omitted).

8

A.    **Whether the ALJ Erred by Relying on the Vocational Expert's**
      **Testimony**

Dunn alleges that Judge Carletti relied on "deficient vocational testimony" when he found that a significant number of jobs existed that Plaintiff was capable of performing. (Mot. Summ. J. Attach. #1 Mem. P. & A. 3, ECF No. 13.) Dunn states that the vocational expert did not describe the method he used to determine how many jobs existed. (Id. at 4.) He continues, "Unfortunately the numbers of jobs which the vocational expert identifies do not exist and are contradicted by the relevant Bureau of Labor Statistics (BLS) data." (Id.) Plaintiff maintains that according to the Bureau of Labor Statistics, 870 atomizer-assembler jobs, 2,680 dowel-inspector jobs, and 5,640 nut-sorter jobs exist in the national economy. (Id. at 4-6 (citing id. Attach. #2 at 1-3).) These positions total 9,200 jobs, which is not a significant number. (Id. at 7.) In light of this information, Dunn argues that the vocational expert's uncorroborated testimony is not supported by substantial evidence. (Id. at 8.)

Plaintiff relies on Farias v. Colvin, 519 F. App'x 439 (9th Cir. 2013), a recent, unpublished case where the Ninth Circuit considered reports from the Bureau of Labor Statistics. (Mot. Summ. J. Attach. #1 Mem. P. & A. 4, ECF No. 13.) According to Dunn, Farias concluded that the ultimate question was "whether a reasonable person could accept the testimony of the vocational expert when that testimony diverges so radically from the published sources cited in cases." (Id. at 8.) Because "the vocational expert did not volunteer on what [sic] methodology the vocational expert based his opinion or what data sources were used[,]"

1   Plaintiff argues that the testimony is not substantial evidence
2   supporting the ALJ's decision, so the case should be reversed and
3   remanded.  (Id.)

4        In her Cross-Motion for Summary Judgment, Defendant asserts
5   that the vocational expert's testimony constituted substantial
6   evidence supporting the ALJ's decision.  (Cross-Mot. Summ. J. &
7   Opp'n Attach. #1 Mem. P. & A. 3, 5, ECF No. 14.)  She submits that
8   the administrative law judge reasonably determined that a
9   significant number of jobs existed that Dunn could perform.  (Id.
10  at 5.)  "Plaintiff is not a vocational expert and provides no
11  explanation why the court should favor his vocational information
12  over the testimony of the VE, whose 'recognized expertise provides
13  the necessary foundation for his or her testimony,' and, therefore,
14  'no additional foundation is required.'"  (Id. at 6 (citation
15  omitted).)  Additionally, vocational experts are not required to
16  disclose their methodology.  (Id.)  Defendant further claims that
17  the source for the data provided by Dunn is not among those that
18  the ALJ will judicially notice for "'reliable job information.'"
19  (Id. at 7 (citing 20 C.F.R. § 404.1566(d)).)  The Plaintiff's
20  occupational reports were not provided to the ALJ for analysis;
21  even if they had been, Colvin contends that Judge Carletti was not
22  required to accept them.  (Id. at 8.)  Notably, Defendant ignores
23  Farias, the case on which Plaintiff chiefly relies.  (See generally
24  id. at 3-8.)

25       Prior to Farias, case law was reasonably well settled that
26  administrative law judges are entitled to rely on vocational expert
27  testimony regarding the number of jobs that exist in the economy.
28  The testimony of a vocational expert constitutes substantial

13cv01219 MMA(RBB)

1   evidence supporting an ALJ's decision.  Osenbrock v. Apfel, 240

2   F.3d 1157, 1163 (9th Cir. 2001); see also Bayliss, 427 F.3d at 1218

3   ("A VE's recognized expertise provides the necessary foundation for

4   his or her testimony.  Thus, no additional foundation is

5   required.").  An ALJ's determination should be affirmed "[w]here

6   the evidence is susceptible to more than one rational

7   interpretation, one of which supports the ALJ's decision."  Thomas,

8   278 F.3d at 954 (citation omitted); see Lewis v. Apfel, 236 F.3d

9   503, 509 (9th Cir. 2001); see also Hunt v. Colvin, No. EDCV 12-1117

10  AN, 2013 WL 1969401, at *3 (C.D. Cal. May 13, 2013); Engrave v.

11  Colvin, No. EDCV 12-2021 JC, 2013 WL 1661754, at *3 (C.D. Cal. Apr.

12  17, 2013); Gonzales v. Colvin, No. CV 12-3501-PJW, 2013 WL 1614937,

13  at *1-2 (C.D. Cal. Apr. 15, 2013); McCaleb v. Colvin, No. EDCV

14  12-01428-JEM, 2013 WL 1516259, at *4-6 (C.D. Cal. Apr. 12, 2013).

15      Vocational experts are not required to disclose their

16  methodology.  Merryflorian v. Astrue, No. 12-CV-2493-IEG (DHB),

17  2013 WL 4783069, at *7 (S.D. Cal. Sept. 6, 2013).  Claimants are

18  also typically represented by counsel at administrative hearings,

19  who may cross-examine the vocational expert and challenge any

20  discrepancies in the expert's testimony.  See Solorzano v. Astrue,

21  No. ED CV 11-369-PJW, 2012 WL 84527, *6 (C.D. Cal. Jan. 10, 2012)

22  ("Counsel are not supposed to be potted plants at administrative

23  hearings.  They have an obligation to take an active role and to

24  raise issues that may impact the ALJ's decision while the hearing

25  is proceeding so that they can be addressed.").

26      Plaintiff had ample opportunity to cross-examine the
        [vocational expert] on his methodology for determining
27      the number of available jobs, but declined to do so.
        Moreover, Plaintiff has not established that [her source]
28      is the only source of job data or superior to others.

11

Nor does Plaintiff support her interpretation of raw numbers included in [the alternate source of] data with any analysis or explanation from a [vocational expert].

Hunt, 2013 WL 1969401, at *3 (internal citations omitted).  Dunn's case suffers from the same flaws.  Additionally, even if Plaintiff's belated data is considered, because the evidence is susceptible to a reasonable interpretation that supports the ALJ's decision, his conclusion must be upheld.  See Thomas v. Barnhart, 278 F. at 954.  For these reasons, the court will not second guess the ALJ's reliance on vocational expert testimony.

On May 20, 2013, the Ninth Circuit issued an unpublished opinion in Farias, 519 F. App'x 439.[2]  In that case, the vocational expert opined that the claimant could work as a "head dance hall hostess," and 3,600 positions existed locally and 342,000 jobs nationally.  Id. at 440.  The court held that "no reasonable mind" could accept that number of jobs.  Id.  It stated:

The most plausible explanation appears to be that the VE properly testified that a person with Farias' characteristics and RFC could perform the job requirements of head dance hall hostess but erroneously provided employment data for restaurant hostess –– an occupation that exists in far larger numbers.  Notably, the employment numbers reported by the Bureau of Labor

_____

[2]  Under Ninth Circuit Rule 36-3, unpublished Ninth Circuit opinions have "only persuasive rather than authoritative or precedential value."  Johnson v. Nevada ex rel. Bd. of Prison Com'rs, No. 3:11-cv-00487-HDM-VPC, 2013 WL 5428423, at *7 (D. Nev. Sept. 26, 2013) (footnote omitted); see Gray v. Astrue, No. CV 11-294-C-REB, 2012 WL 4097762, at *9 (D. Idaho Sept. 17, 2012) (footnote omitted).  Furthermore, "a three judge panel may not overrule [binding precedent] absent intervening Supreme Court or en banc authority . . . ."  United States v. Rodriquez-Lara, 421 F.3d 932, 943 (9th Cir. 2005) (citing Obrey v. Johnson, 400 F.3d 691, 699-701 (9th Cir. 2005); H & D Tire & Automotive-Hardware, Inc. v. Pitney Bowes, Inc., 227 F.3d 326, 330 (5th Cir. 2000) ("When panel opinions appear to conflict, we are bound to follow the earlier opinion.") (footnote omitted).  Farias does not conflict with existing precedent recognizing the role of vocational expert testimony.

> Statistics for the occupation of restaurant host/hostess
> are very similar to the numbers the VE proffered for the
> job of head dance hall hostess.

Id. (citations omitted).  The Ninth Circuit concluded that the vocational expert provided employment data for the wrong job; the ALJ's determination regarding the number of jobs in the national economy was therefore not supported by substantial evidence. Accordingly, the case was remanded.  Id.

To date, only a handful of courts have interpreted Farias.[3] In Darling v. Colvin, No. EDCV 13-266 JC, 2013 WL 4768038, at *5 (C.D. Cal. Sept. 4, 2013) (internal citation omitted), the court construed Farias as standing for the proposition that "although a vocational expert's testimony may, without more, constitute substantial evidence of the number of jobs that exist in the national economy, remand may be appropriate where the record reflects that the vocational expert's testimony was fundamentally flawed."  The court explained:

> [T]he Job Browser Pro reports suggest that the
> employment numbers the vocational expert provided at
> the hearing may have erroneously pertained to entire
> Occupational Employment Survey ("OES") statistical
> groups rather than the individual representative
> occupations encompassed therein.  For example, the
> vocational expert testified that there were 47,000
> positions in California and 434,000 nationally for
> the individual occupation of inspector (DOT §
> 727.687-066), and 40,000 positions in California and
> 400,000 nationally for packager (DOT § 559.687-074).
> The Job Browser Pro reports, however, reflect
> significantly fewer positions for all of OES group
> No. 51-9061 (i.e., 47,720 for California and 434,170
> nationally)—the OES group that encompasses both the

---

[3]   Post-Farias, some courts have not addressed Farias when presented with similar issues.  See Merryflorian v. Astrue, 2013 WL 4783069, at *4-8; Solano v. Colvin, No. SA CV 12-01047 RZ, 2013 WL 3776333, at *1-2 (C.D. Cal. July 16, 2013); Villareal v. Colvin, No. EDCV 12-01640-JEM, 2013 U.S. Dist. LEXIS 85811, at *8-16 (C.D. Cal. June 18, 2013); Valenzuela v. Colvin, No. CV 12-0754-MAN, 2013 U.S. Dist. LEXIS 73439, at *6-14 (C.D. Cal. May 23, 2013).

inspector and packager occupations, and which contains a total of "782 specialty occupations (unique DOT codes)." Similarly, the vocational expert testified that for the individual assembler occupation (DOT § 731.687-034) there were 20,000 positions in California and 235,000 nationally—virtually the same numbers as for all of OES group No. 51-9399 (i.e., 20,190 in California, 235,910 nationally) the OES group that encompasses the assembler occupation and which contains a total of 1587 individual occupations.

(Id. (internal citations omitted).) Because the vocational expert likely provided data for the wrong job, the case was remanded. (Id. at *6.)

In a more recent case, Direaux v. Colvin, No. EDCV 13-61-OP, 2013 WL 6239327, at *3 (C.D. Cal. Dec. 3, 2013), Farias was construed as authorizing a remand where the vocational expert's testimony was "fundamentally flawed." The plaintiff provided evidence from the Bureau of Labor Statistics that conflicted with the vocational expert's unexplained testimony regarding the number of available jobs. Id. at *2-3. The court could not "confidently conclude" that the ALJ's decision was supported by substantial evidence; the matter was remanded for "further clarification and testimony from the [vocational expert]." Id. at *3. In Vera v. Colvin, No. CV 12-7078-SS, 2013 WL 6144771, at *25 n.36 (C.D. Cal. Nov. 21, 2013), however, the court interpreted Farias narrowly, inferring that it was only applicable if the vocational expert clearly provided data for the wrong job. The court in Vera affirmed the ALJ's decision. Id. at 25.

Judge Wilner, in Daniels v. Colvin, No. CV 13-654 MRW, 2014 WL 794498, at *2-6 (C.D. Cal. Feb. 26, 2014), relied on Farias, in part, and remanded the case because the vocational expert's testimony about the total number of available jobs was based on an

14

unexplained conclusion "that roughly one-third of all people employed in the broad "Counter and Rental Clerks category of jobs served as photofinishing counter clerks." Id. at *5.  The court stated that Farias stood for the proposition that "[a] reasonable mind need not accept obvious errors in a vocational expert's testimony that lead to implausible results."  Id. at *3 (citing Farias, 519 F. App'x at 440).

Like the courts in Darling and Direaux, this Court interprets Farias to allow a district court to remand a case when the vocational expert's testimony is "fundamentally flawed."  See Direaux, 2013 WL 6239327, at *3; Darling, 2013 WL 4768038, at *5. This is a high bar to overcome.  If the testimony is not fundamentally flawed, it constitutes substantial evidence supporting the ALJ's decision.  Cf. Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 527 (9th Cir. 2014) (citing Thomas, 278 F.3d at 960-61) (noting that in Thomas, the administrative law judge's determination of the number of jobs in the relevant region was supported by substantial evidence because it was based on vocational expert testimony).

Here, the vocational expert determined that 38,000 nut-sorter jobs, 410,000 dowel-inspector jobs, and 229,000 atomizer-assembler jobs existed in the national economy.  (Admin. R. Attach. #2, 55, ECF No. 11.)  "All that is required for a nondisability finding at step five is a single job that exists in substantial numbers that the claimant can perform."  Coelho v. Astrue, No. C 10-02102 JSW, 2011 WL 3501734, at *11 (N.D. Cal. Aug. 10, 2011) (emphasis added) (citing 20 C.F.R. § 404.1566(b)).  The Ninth Circuit recently held that 25,000 jobs, nationally, and 2,500 jobs in the State of

15

California, each constitutes a significant number of jobs in the economy.  <u>Gutierrez</u>, 740 F.3d at 528-29.

The jobs identified by the vocational expert in this case therefore exist in significant numbers in the national economy. Cummings's testimony regarding the identified jobs is not fundamentally flawed, so the ALJ's determination should be upheld. <u>See</u> <u>Yelovich v. Colvin</u>, 532 F. App'x 700, 702 (9th Cir. 2013) (finding harmless error where the ALJ relied on vocational testimony that incorrectly referenced two jobs but also accurately identified a third position for which 900 regional jobs existed -- a significant number); <u>Allison v. Astrue</u>, 425 F. App'x 636, 640 (9th Cir. 2011) (noting that ALJ's error in finding that claimant could work as a small-parts assembler was harmless because other jobs identified by the vocational expert existed in significant numbers); <u>Green v. Colvin</u>, No. C13-0749-JCC, 2014 WL 688953, at *7 (W.D. Wash. Feb. 21, 2014) ("[A]ny error in relation to the dishwasher and hand packager positions can be deemed harmless given the identification of a significant number of motel/hotel housekeeper jobs."); <u>Nelson v. Colvin</u>, No. C12-5540 RJB, 2014 WL 372496, at *1 (W.D. Wash. Feb. 3, 2014) ("The ALJ found that plaintiff was not disabled because he could perform representative unskilled jobs including night cleaner and polisher.  The polisher job exists in significant numbers in the national economy, and thus any error related to the night cleaner job is harmless."); <u>Veteto v. Colvin</u>, No. 6:13-cv-00298-MO, 2014 WL 412414, at *6 (D. Or. Feb. 3, 2014) (affirming ALJ's decision where there was insufficient evidence that the claimant could work as a small products assembler and security guard, but the administrative law judge properly found

that the claimant could work as a postage machine operator, a job

that existed in significant numbers); Turner v. Colvin, No. CV

12-9111-JPR, 2013 WL 5817558, at *19 (C.D. Cal. Oct. 28, 2013)

(finding harmless error where the ALJ incorrectly determined that

the claimant could work as a hand packager and kitchen helper, but

correctly found that he could work as a food service worker, a job

that existed in significant numbers).

### 1. Nut-sorter job

The vocational expert opined that 38,000 nut-sorter jobs

existed in the national economy. (Admin. R. Attach. #2, 55, ECF

No. 11.)[4]  This number is substantially less than the estimates he

provided for the two other available positions.  (Id. (finding

410,000 dowel-inspector jobs and 229,000 atomizer-assembler jobs

nationally).)  A survey of recent cases shows that vocational

expert estimates vary widely regarding the number of nut-sorter

jobs that exist nationally -- ranging from 1,100 to 600,000

positions.  See Prince v. Colvin, Case No. 3-12-CV-05609-LB, 2013

WL 5371917, at *6 (N.D. Cal. Sept. 25, 2013) (stating that

vocational expert opined that 467,000 jobs existed nationally); Ray

v. Comm'r of Soc. Sec., No. 1:12-cv-01173-SAB, 2013 WL 4852481, at

*3 (E.D. Cal. Sept. 10, 2013) (14,000 jobs); Kelly v. Astrue, No.

2:11-cv-2534-KJN, 2012 WL 5868595, at *2 (E.D. Cal. Nov. 19, 2012)

---

[4]  A nut sorter performs the following tasks:

> Removes defective nuts and foreign matter from bulk
> nut meats:  Observes nut meats on conveyor belt, and
> picks out broken, shriveled, or wormy nuts and foreign
> matter, such as leaves and rocks.  Places defective nuts
> and foreign matter into containers.  May be designated
> according to kind of nut meat sorted as Almond Sorter.

Dictionary of Occupational Titles 521.687-086, available at 1991 WL
674226.

(5,000 jobs); <u>Antico v. Astrue</u>, No. 1:11-cv-640, 2012 WL 4473157, at *11 (S.D. Ohio Sept. 26, 2012) (12,951 jobs); <u>Brannon v. Astrue</u>, C/A No. 1:11-1568-SVH, 2012 WL 3842572, at *5 (D. S.C. Sept. 4, 2012) (64,000 jobs); <u>Lewis v. Comm'r of Soc. Sec.</u>, Civil Action No. 09-0932, 2010 WL 5103776, at *3 (W.D. La. Oct. 13, 2010) (9,342 jobs); <u>De La Cruz v. Astrue</u>, No. 1:09cv01222 DLB, 2010 WL 3069272, at *3 (E.D. Cal. Aug. 4, 2010) (1,100 jobs); <u>Minner v. Astrue</u>, 741 F. Supp. 2d 591, 598 (D. Del. 2010) (600,000 jobs); <u>Calderon v. Astrue</u>, No. 1:08-cv-01015 GSA, 2009 WL 3790008, at *2 (E.D. Cal. Nov. 10, 2009) (15,000 jobs).

Cummings testified that 38,000 sorter positions were available nationally. This figure is significantly larger than numbers identified in other cases and approved by the courts. While <u>Farias</u> created an opening for courts to examine an ALJ's reliance on vocational expert testimony, it is a narrow opening. The estimate provided by the vocational expert in this case falls well within the range of estimates accepted in other cases. Reasonable minds clearly differ on the number of nut-sorter positions that exist in the national economy. Moreover, Plaintiff does not argue that the vocational expert provided data for the wrong job or category of jobs. <u>See Farias</u>, 519 F. App'x at 440; <u>Vera</u>, 2013 WL 6144771, at *25 n.36; <u>Darling</u>, 2013 WL 4768038, at *5.

The data supplied by Dunn is unaccompanied by an analysis or explanation from a vocational expert. <u>See Newsome v. Colvin</u>, No. EDCV 12-0371 AN, 2013 WL 800699, at *2 (C.D. Cal. Mar. 4, 2013). "At most, the data Plaintiff submitted raised a potential conflict." <u>Id.</u> "Any such conflict [regarding the numbers of relevant jobs] does not prevent the vocational expert's testimony

18

from constituting substantial evidence to support the
administrative decision, however." Bradley v. Astrue, No. CV 12-
3361-E, 2012 WL 5902349, at *7 (C.D. Cal. Nov. 26, 2012).

In this case, Cummings gave his expert opinion. "'The expert
is only required to state his opinion as to the number of jobs
available in the national economy to a person with the applicant's
residual functional capacity, age, work experience, and education.'
The ALJ decision, then, was consistent with Ninth Circuit authority
and free of legal error." McCaleb v. Colvin, 2013 WL 1516259, at
*6 (footnote omitted) (citations omitted).

The Court does not find the testimony of Alan Cummings, the
vocational expert, "fundamentally flawed." Accordingly, the ALJ's
determination based on the vocational expert's testimony must be
upheld for the reasons explained above. See Osenbrock, 240 F.3d at
1163; Bayliss, 427 F.3d at 1218.

**2.    Dowel-inspector positions**

The vocational expert testified that there were 410,000
inspector jobs[5] nationally. (Admin. R. Attach. #2, 55, ECF No.
11.) For the dowel-inspector position, there is a wide variance in
the number of dowel-inspector jobs that vocational experts have
opined existed nationally -- from 2,500 to 649,130. See Pentecost
v. Astrue, No. 3:12-0154, 2013 WL 2434987, at *6 (M.D. Tenn. June
4, 2013) (stating that vocational expert testified that 64,000
dowel-inspector jobs existed nationally); McIntyre v. Astrue, No.
6:11-cv-00800, 2012 WL 7660420, at *20 (S.D. W. Va. Dec. 18, 2012)

_____

[5]   A dowel inspector "[i]nspects dowel pins for flaws, such as
square ends, knots, or splits, and discards defective dowels."
Dictionary of Occupational Titles 669.687-014, available at 1991 WL
686074.

1  (80,000 jobs); <u>Woodard v. Astrue</u>, No. 1:10-cv-327-DBH, 2011 WL

2  2580641, at *5 (D. Me. June 28, 2011) (13,167 jobs); <u>McKillip v.</u>

3  <u>Astrue</u>, Civil No. 09-2595-WQH (WVG), 2010 WL 5827491, at *8 (S.D.

4  Cal. Dec. 13, 2010) (98,000 jobs); <u>Sessions v. Astrue</u>, No.

5  08-CV-0724-A, 2010 WL 883697, at *7 (W.D.N.Y. Mar. 8, 2010) (37,000

6  jobs); <u>Schreier v. Astrue</u>, No. 3:08-cv-00223-LRH (VPC), 2009 WL

7  4757242, at *2 (D. Nev. Dec. 10, 2009) (2,500 jobs); <u>Mahoney v.</u>

8  <u>Astrue</u>, Civil Action No. 3:09-CV-810-L, 2009 WL 3097334, at *5

9  (N.D. Tex. Sept. 25, 2009) (649,130 jobs); <u>Maldonado v. Astrue</u>, No.

10  07-CV-6439, 2008 WL 4682444, at *2 (W.D. N.Y. Oct. 21, 2008)

11  (144,000 jobs).

12     Notably, vocational expert Cummings testified in another case

13  in this district that 40,000 dowel-inspector jobs existed

14  nationally. <u>See</u> <u>Tudino v. Barnhart</u>, No. 06-CV-2487-BEN (JMA), 2008

15  WL 4161443, at *6, 11 (S.D. Cal. Sept. 5, 2008) (citations omitted)

16  (stating that Tudino noted that Cummings opined that 40,000 dowel-

17  inspector jobs existed nationally). It is difficult for this Court

18  to reconcile a ten-fold increase in the number of dowel-inspector

19  jobs over a span of only a few years. If this was the only

20  position identified by Cummings, a remand for further evidence from

21  the vocational expert might be in order. But because other

22  positions were identified by the vocational expert, any error in

23  connection with the number of available dowel-inspector positions

24  is harmless. <u>See</u> <u>Allison v. Asrue</u>, 425 F. App'x at 640; <u>Green v.</u>

25  <u>Colvin</u>, 2014 WL 688953, at *7.

26

27

28

13cv01219 MMA(RBB)

### 3.   Atomizer assemblers

Cummings also testified that 229,000 assembler[6] positions were available in the national economy, and 1,300 were available in San Diego County.  (Admin. R. Attach. #2, 55, ECF No. 11.)  Again, Dunn has provided the Court with data to show that there are fewer atomizer-assembler positions than testified to by the vocational expert.  (See Mot. Summ. J. Attach. #3, 1-2, ECF No. 13.)  Dunn's information was not submitted to the ALJ or the Appeals Council, and it does not include an analysis from a vocational expert.  See Newsome v. Colvin, 2013 WL 800699, at *2.  Even if Plaintiff can create a potential conflict, the ALJ may, nevertheless, rely on the testimony of the vocational expert as substantial evidence supporting the ALJ's decision.  Bradley v. Astrue, 2012 WL 5902349, at *7.  Cummings's testimony concerning the number of atomizer-assembler positions is not "fundamentally flawed" and constitutes substantial evidence supporting Judge Carletti's decision.  See Osenbrock v. Apfel, 240 F.3d at 1163; see also Bayliss, 427 F.3d at 1218 (holding that vocational expert's expertise is sufficient foundation for his testimony).  Dunn's attempt to show a conflict between his data and Cummings's testimony does not entitle Plaintiff to relief.

### V.   CONCLUSION AND RECOMMENDATION

"The decision of the Commissioner must be upheld if it is supported by substantial evidence and if the Commissioner applied the correct legal standards."  Howard ex rel. Wolff v. Barnhart,

---

[6]   An atomizer assembler "[a]ssembles component parts of perfume atomizers, such as stems, washers, springs, and plungers, using handtools:  Screws completed atomizers onto empty glass containers and places them in boxes."  Dictionary of Occupational Titles 706.684-030, available at 1991 WL 679052.

21

341 F.3d 1006, 1011 (9th Cir. 2003) (citing <u>Paqter v. Massanari</u>,
250 F.3d 1255, 1258 (9th Cir. 2001)).  If the AlJ's decision is not
supported by substantial evidence, remand or reversal is
appropriate.  <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1457 (9th Cir.
1984).

    For the reasons stated above, Plaintiff's Motion for Summary
Judgment [ECF No. 13] should be **DENIED**, and Defendant's Cross-
Motion for Summary Judgment [ECF No. 14] should be **GRANTED**.  This
Report and Recommendation will be submitted to the United States
District Court Judge assigned to this case, pursuant to the
provisions of 28 U.S.C. § 636(b)(1).  Any party may file written
objections with the Court and serve a copy on all parties on or
before April 30, 2014.  The document should be captioned
"Objections to Report and Recommendation."  Any reply to the
objections shall be served and filed on or before May 14, 2014.
The parties are advised that failure to file objections within the
specified time may waive the right to appeal the district court's
order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


Dated: April 9, 2014

RUBEN B. BROOKS
United States Magistrate Judge

cc:  Judge Anello
     All Parties of Record